Paul G. Karlsgodt (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Fax: 303.861.7805
pkarlsgodt@bakerlaw.com

Michelle M. Buckley (AZ #030617)
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: 602.650.2000
Fax: 602.264.7033
mmbuckley@polsinelli.com

*Attorneys for Defendant Yuma Regional Medical Center*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Ogrady, individually on behalf of herself and on behalf of all others similarly situated, and Mayra Esquivel, individually and as next friend of her minor son, Ernesto Noriega, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Yuma Regional Medical Center; John and Jane Does I-X; ABC Corporations I-X; DEF LLCs I-X; and XYZ Partnerships I-X,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE THAT, Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 Defendant Yuma Regional Medical Center ("YRMC" or "Defendant"), hereby removes this action filed by Margaret Ogrady, Mayra Esquivel, and Ernesto Noriega ("Plaintiffs"), individually and on behalf of all others similarly situated, from the Superior

84383255.1

Court of the State of Arizona in and for the County of Yuma, Arizona, where it is now pending, to the United States District Court for the District of Arizona. In support of removal, YRMC states as follows:

## JURISDICTION

1. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3. On June 28, 2022, Plaintiffs, on behalf of themselves and, purportedly, all others similarly situated, filed a filed a Class Action Complaint for Damages, Injunctive, and Equitable Relief (the "Complaint") against YRMC in Arizona State Court, Yuma County Superior Court, Tier 3, Case No. S-1400-CV-202200351 (the "State Court Action"). Plaintiffs filed the Complaint as a putative class action.

4. On June 29, 2022, Plaintiffs served YRMC with copies of the Summons and Complaint via process server. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by YRMC are attached hereto as Exhibits.

5. Pursuant to Local Rule 3.6(b), attached are true and correct copies of all pleadings and other documents previously filed in the State Court Action, including the most recent state court docket (Exhibit A); the operative Complaint (Exhibit B); service documents (*i.e.*, Summons and Service Certificate) (Exhibit C); and Certificate of Compulsory Arbitration (Exhibit D).

6. No further pleadings or documents (*i.e.*, civil cover sheets, answers, state court orders terminating or dismissing parties, notices of appearance, responses, or replies to pending motions) have been filed in the State Court Action.

7. The Supplemental Civil Cover Sheet required by Local Rule 3.6(a) is

attached hereto as Exhibit E.

8. A Declaration by counsel for YRMC that true and correct copies of all pleadings and other documents filed in the State Court Action is attached hereto as Exhibit F.

9. This removal is timely because YRMC filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 56 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## CAFA JURISDICTION

10. <u>Basis of Original Jurisdiction.</u> This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is citizen of a different state than that of the defendant. § 1332(d)(1)-(2)(A); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014)).

11. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), YRMC may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (citation omitted).

## THIS ACTION IS PLED AS A CLASS ACTION

12. CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'"

– 3 –

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., et al.*, 602 F.3d 1087, 1089 (9th Cir. 2010) (quoting 28 U.S.C. § 1332(d)(1)(B)).

13. Plaintiffs bring this action as a "class action" and seek certification of a nationwide class pursuant to Arizona Rule of Civil Procedure 23. [Compl., ¶¶ 101-02.] Because Arizona Rule of Civil Procedure 23 is a "similar State statute authorizing an action to be brought by 1 or more representatives as a class action" as "Arizona Rule of Civil Procedure 23 'is identical to Federal Rule of Civil Procedure 23,'" *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 533 (9th Cir. 2011) (citation omitted), the first CAFA requirement is satisfied, [*see* Compl., ¶ 101 ("Plaintiffs bring this action on behalf of themselves and on behalf of all persons similarly situated ('the Class') . . . pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Arizona Rules of Civil Procedure.")].

### **THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS**

14. Plaintiffs allege that, in April 2022, YRMC "identified a ransomware incident [that] affected its internal systems." [*See* Compl., ¶ 3.] Specifically, Plaintiffs allege that, following investigation of the ransomware incident, YRMC determined that, between April 21, 2022 and April 25, 2022, "an unauthorized third-party gained access to files containing patient information, including names, Social Security numbers, health insurance information, and limited medical information" (the "Data Breach"). [*Id.*]

15. Specifically, Plaintiffs now purport to bring this action on behalf of themselves and a nationwide class defined as "[a]ll United States residents whose [personal identifying information ("PII")] and [protected health information ("PHI")] was actually or potentially accessed or acquired during the Data Breach event that is subject to the Notice of Data breach that Defendant published to Plaintiffs and other Class Members on or around April 22, 2012[sic] [.]"[1]  [*Id.* at ¶ 102.]

---

[1] YRMC notes that Plaintiffs' class definition refers to a data breach that occurred "on or around April 22, 2012[.]" [Compl., ¶ 102.]  This appears to be an oversight, as Plaintiffs reference the relevant data breach at issue in other sections of the Complaint as the one that occurred between April 21 and April 25, 2022.  [*See id.* at ¶ 3.]  Accordingly, YRMC

– 4 –

16. Plaintiffs further allege that "[a]s a result of the Data Breach, Plaintiffs and approximately 700,000 members of the Class[] suffered ascertainable losses in the form of loss of benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack. . . ." [*Id.* at ¶ 4; *see also id.* at ¶ 118 ("The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of approximately 700,000 patients of YRMC whose sensitive data was compromised in [the] Data Breach.").]

17. Furthermore, YRMC sent breach notification letters to approximately 720,217 individuals.

18. Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals. *See Kuxhausen* v. *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (finding that where a plaintiff alleges that the estimated number of putative class members in his complaint is greater than 200, "[n]o investigation" or "further inquiry" is necessary for the court to conclude that CAFA numerosity is satisfied).

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

19. Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . **any member of the class of plaintiffs** is a citizen of a State different from **any defendant**." (emphasis added). *See also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (stating that "CAFA only requires what is termed 'minimal diversity,'" *i.e.*, when "any member of a class of plaintiffs is a citizen of a state different from any defendant") (citation omitted). Accordingly, if any member of the purported class is a citizen of a state different than the state of citizenship of any defendant, then minimal diversity exists. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019).

---

assumes Plaintiffs' class definition refers to the attack perpetrated against YRMC in April 2022, and not in April 2012, for purposes of this Notice.

20. <u>YRMC's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), a corporation is "deemed a citizen of its place of incorporation and the location of its principal place of business." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994); 28 U.S.C. § 1332(c)(1). A corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the cooperation's activities." *Morris v. Embry-Riddle Aeronautical Univ. Inc.*, No. CV-21-08102-PCT-DWL, 2021 WL 2773094, at *1 (D. Ariz. July 2, 2021) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). "This place, metaphorically dubbed the corporation's 'brain' or 'nerve center,' 'will typically be found at a corporation's headquarters,' 'provided that the headquarters is the actual center of direction, control, and coordination[.]'" *Id.* (quoting *Hertz Corp.*, 559 U.S. at 80-81, 93, 95).

21. YRMC is a corporation incorporated under the laws of Arizona with its headquarters at 2400 South Avenue A, Yuma, 85364. Because YRMC is incorporated in Arizona and maintains its principal place of business in Arizona, YRMC is a citizen of Arizona. [*See also* Compl., ¶ 16.]

22. <u>Plaintiffs' and the Putative Class Members' Citizenship</u>. For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020); 28 U.S.C. § 1332(a)(1). "One's domicile is his or her 'permanent home'—that is where (i) she resides, (ii) 'with the intention to remain there or to which she intends to return.'" *Adams*, 958 F.3d at 1221 (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013)); *see also Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 950 (D. Ariz. 2010) (citation omitted). A person's state of residency is not equivalent to domicile (nor, therefore, citizenship), although residency is one factor to be considered in the domicile analysis. *Adams*, 958 at 1221 (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Ehrman*, 932 F.3d at 1227 (citations omitted); *Lending Co., Inc. v. Craythorn*, No. CV 12–01205–PHX–NVW, 2012 WL 3585411, at *1 (D. Ariz. Aug. 20, 2012) (citation omitted).

23.     As alleged in the Complaint, Plaintiffs are natural persons, residents, and citizens of Arizona. [Compl., ¶¶ 13-15.] Accordingly, Plaintiffs are citizens of Arizona.

24.     Plaintiffs, however, seek to represent a nationwide class that includes (1) "[a]ll United States residents whose PII and PHI was actually accessed or acquired during the Data Breach event that is subject to the Notice of Data breach that Defendant published to Plaintiffs and Class Members on or around April 22, 2012[sic]," [*id.* at ¶ 102], and (2) that is not geographically limited. To date, YRMC has sent notice of the alleged Data Breach to individuals with addresses in all 49 states other than Arizona, multiple U.S. territories, and Canada and Mexico.

25.     Therefore, the class, as defined by Plaintiffs, includes individuals who, in the absence of other evidence to the contrary, are residents and therefore domiciled in—and thus citizens of—states other than Arizona, the state of citizenship of YRMC. Said differently, because at least one putative class member is a citizen of a state other than Arizona, "minimal diversity" is established pursuant to CAFA. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (citing 28 U.S.C. § 1332(d)(2)(A)).

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[2]

26.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiffs' complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C. § 1446(c)(2)(b). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89. The amount in controversy is "presumptively satisfied" unless "it appears to a 'legal certainty' that the plaintiff cannot

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs or putative class members can state or have stated a claim or that they are entitled to damages in any amount. YRMC denies liability, denies Plaintiffs and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 595, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)). Furthermore, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000, *Burge v. Freelife Int'l, Inc.*, No. CV 09–1159–PHX–JAT, 2009 WL 3872343, at *2 (D. Ariz. Nov. 18, 2009) (citing 28 U.S.C. § 1332(d)(6)), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted) (emphasis in original). In addition, in determining the amount in controversy, the Court must accept "all allegations contained in the complaint as true and assumes the jury will return a verdict in plaintiff's favor on every claim," *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017), and the "jurisdictional threshold is not defeated merely because it is equally possible that the damages [ultimately awarded] might be less than the . . . requisite amount," *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (citation and internal punctuation marks omitted).

27. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

28. <u>Claims for Negligence and Negligence *Per Se*</u>. Plaintiffs bring claims for negligence and negligence *per se*. [Compl., ¶¶ 125-41 (negligence); ¶¶ 142-51 (negligence *per se*).]

29. Plaintiffs allege that YRMC "owed a duty of care to use reasonable means to secure and safeguard its computer system—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft," and had a duty to use reasonable security measures under the common law, Section 5 of the Federal Trade Commission Act ("FTC"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and in particular 45 C.F.R. § 164.530 *et seq.* [*Id.* at ¶¶ 127-31, 143-49.]

30. Plaintiffs allege that YRMC breached these and other duties "by failing to

– 8 –

84383255.1

use reasonable measures to protect Class Members' Private Information" and "[f]ailing to timely notify Class Members about the Data Breach," among other things. [*Id.* at ¶ 133.]

31. Plaintiffs further allege that YRMC's failure to comply with Section 5 of the FTC and HIPAA, 45 C.F.R. § 164.530, constitutes negligence *per se*. [*Id.* at ¶¶ 145, 149.]

32. As a result of YRMC's alleged negligence and negligence *per se*, Plaintiffs claim they and the Class have suffered and will continue to suffer various injuries, including, among other injuries, "identity theft"; "compromise, publication, and/or theft of their PII and/or PHI"; "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and/or PHI"; and "lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach." [*Id.* at ¶¶ 138, 149.] Plaintiffs claim they are therefore "entitled to recover actual, consequential, and nominal damages" for YRMC's alleged negligence and negligence *per se*. [*Id.* at ¶¶ 141, 151.] Plaintiffs also claim they are entitled to injunctive relief requiring YRMC to "(i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members." [*Id.* at ¶ 137.]

33. The Complaint contains no allegations that would support or suggest the amount in damages Plaintiffs or any of the putative class members allegedly sustained as a consequence of YRMC's negligence or negligence *per se*. However, because Plaintiffs seek injunctive relief specifically requesting that YRMC be continued to provide credit monitoring to them and putative class members, one option for assigning a value to these damages is through the cost of credit monitoring.

34. Three prominent identity-protection agencies (Equifax, IDShield, and Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to $19.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach

84383255.1

notifications, full-service restoration when theft occurs, and 24/7 emergency assistance, among other services, for $14.95 per month for one individual.[3] Similarly, both Equifax[4] and Experian[5] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively. Multiplying the cost of providing one month of credit-monitoring services at $14.95 (the cheapest of the three products) by the number of alleged putative class members, the amount in controversy for just credit monitoring is approximately $10,767,244 (calculated as 720,217 individuals notified, times 1 month, times $14.95 per month).

35.     Accordingly, Plaintiffs' and the putative class members' potential credit-monitoring damages alone far exceeds the amount in controversy threshold of $5,000,000. Combined with their other alleged negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

36.     <u>Claims for Breach of Implied Contract</u>.  Plaintiffs also bring claims for breach of implied contract. [Compl., ¶¶ 152-72.]  Specifically, Plaintiffs claim that, by entrusting their PII and PHI to YRMC, Plaintiffs and the Class entered into implied contracts with Defendant whereby Defendant agreed to "keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached or compromised or stolen." [*Id.* at ¶ 153.]  Plaintiffs aver that YRMC

---

[3] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited July 18, 2022); *see also IDShield Individual*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited July 18, 2022).

[4] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited July 18, 2022).

[5] *See Experian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id=k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&k_kw=aud-422897489015:kwd-317312162328&k_mt=e&pc=sem_exp_google&cc=sem_exp_google_ad_858684474_43905679139_515842009606_aud-422897489015:kwd-317312162328_e___k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&ref=identity&awsearchcpc=1&gclid=EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE (last visited July 18, 2022).

1  breached the implied contract formed between Defendant and class members by
2  purportedly failing to safeguard and protect their personal information, by failing to delete
3  the information of Plaintiffs and the Class once their contractual relationship ended, and
4  by failing to provide timely and accurate notice to them that their personal information was
5  compromised as a result of the Data Breach. [*Id.* at ¶ 156.]

6        37.    As a result of YRMC's alleged breach of implied contract, Plaintiffs assert
7  that they and putative class members have suffered and will continue to suffer, among other
8  damages, "ongoing, imminent, and impending risk of identity theft crimes, fraud and abuse,
9  resulting in monetary loss and economic harm"; "loss of the confidentiality of the stolen
10 confidential data"; "expenses and/or time spent on credit monitoring and identity theft
11 insurance"; "lost work time"; and "other economic and non-economic harm." [*Id.* at ¶
12 157.] Consequently, Plaintiffs aver that they are entitled to recover "actual, consequential,
13 and nominal damages," as well as "damages in an amount to be proven at trial." [*Id.* at ¶¶
14 158, 172.]

15       38.    Plaintiffs' Complaint contains no allegations that would support or suggest
16 the amount in damages they or any of the putative class members allegedly sustained as a
17 result of YRMC's breach of implied contract. However, when Plaintiffs' and putative class
18 members' alleged breach of implied contract damages are combined with the damages
19 alleged under the other claims in the Complaint, the amount in controversy further exceeds
20 CAFA's $5,000,000 threshold.

21       39.    <u>Prayer for Injunctive Relief</u>. Plaintiffs also pray for injunctive relief,
22 including, but not limited to, "injunctive and other equitable relief as is necessary to protect
23 the interests of Plaintiffs and Class Members" as well as an order compelling YRMC to do
24 a plethora of things, including, among other things, to "protect, including through
25 encryption, all data collected through the course of their business in accordance with all
26 applicable regulations, industry standards, and federal, state or local laws"; "delete,
27 destroy, and purge the [PII] of Plaintiffs and Class members unless [YRMC] can provide
28 to the Court reasonable justification for the retention and use of such information when

weighed against the privacy interests of Plaintiffs and Class Members"; "implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiffs and Class Members"; "engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on [YRMC]'s systems on a periodic basis, and ordering [YRMC] to promptly correct any problems or issues detected by such third-party security auditors"; "engage independent third-party security auditors and internal personnel to run automated security monitoring"; "audit, test, and train their security personnel regarding any new or modified procedures"; "establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling [PII], as well as protecting the [PII] of Plaintiffs and Class Members," etc. [Compl., Prayer for Relief(C)(i)-(xvi).]

40. "'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation'" or the "value of the thing 'sought to be accomplished by the action.'" *Van Dyke v. Retzlaff*, No. CV-18-04003-PHX-SMB, 2019 WL 276037, at *2 (D. Ariz. Jan. 22, 2019) ("'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'") (quoting *Corral v. Select Portfolio*, 878 F.3d 770, 775 (9th Cir. 2017)); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (citation omitted). In determining the "value of the object of the litigation," courts in the Ninth Circuit have adopted the "either viewpoint rule," which provides that a court should consider "'the pecuniary result to either party which the judgment would directly produce'" when determining the amount in controversy. *Van Dyke*, 2019 WL 276037, at *2 (quoting *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)). "'Under this rule, either the plaintiff's potential recovery or the potential cost to the defendant of complying with the

injunction must exceed the jurisdictional threshold.'" *Id.* (quoting *Stelzer v. CarMax Auto Superstores Cal., LLC*, No. 13–cv–1788 BAS (JMA), 2014 WL 3700269, at *3 (S.D. Cal. July 24, 2014)). In class actions removed under CAFA, the Court may also aggregate each class member's claims to determine whether the aggregate cost to the defendant of complying with any injunctive relief requested exceeds the amount in controversy threshold. *Pagel*, 986 F. Supp. 2d at 1160 (citation omitted).

41. Applied here, any potential recovery to Plaintiffs, including "injunctive and equitable relief as necessary to protect the interests of Plaintiffs and Class Members," to the extent such relief exists, combined with the other damages alleged in the Complaint, underscores that the amount in controversy is greater than $5,000,000.

42. From the "viewpoint" of Defendant, the aggregate cost to YRMC of complying with Plaintiffs' multiple and varied requests for injunctive relief would involve potentially overhauling its state and federal regulatory privacy and cyber security policies, implementing new training procedures, and hiring outside auditors and third-party forensic firms to conduct testing and reviews of YRMC's systems and network. [Compl., Prayer for Relief(C).] The cost of potentially modifying YRMC's privacy and cyber security policies, instituting new training, and hiring outside vendors, among the other injunctive relief requested, combined with the other damages alleged in the Complaint, further underscore that the amount in controversy is greater than $5,000,000. *See, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (accepting defendant's assessment that the cost of complying with plaintiff's requested injunctive relief was "at least $3,888,363," when compliance potentially entailed "overhauling [the product at issue] in some way," including by "removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme" and therefore finding the injunctive relief costs, considered with the other damages alleged in the complaint, exceeded the $5 million CAFA threshold).

43. <u>Other Claims</u>. In addition to the damages discussed above, Plaintiffs also

– 13 –

84383255.1

assert claims for unjust enrichment, and allege that they have suffered or will suffer generalized damages for their other claims, including "actual identity theft"; "the compromise, publication, and/or theft of their PII and PHI"; "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft"; and "lost opportunity costs associated the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI." [Compl., ¶¶ 173-84.] Plaintiffs seek compensation for these allegations and also assert YRMC should be compelled to "disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that [YRMC] unjustly received from them." [*Id.* at ¶ 184.]

44.     No allegations in the Complaint allow YRMC to calculate with specificity the amount of these alleged damages and relief.  However, YRMC underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,00, as already established above. *See, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding plaintiff's complaint "put more than $5 million in controversy" when he sued for "compensatory damages, punitive damages, and attorney's fees for a two year class period").

45.     Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, YRMC has properly removed the State Court Action to this Court.

46.     Indeed, based on the above, there is no "legal certainty" that Plaintiff could not recover an aggregate amount exceeding $5,000,000 required for CAFA removal. *See* 28 U.S.C. § 1332(d)(6); *Guglielmino*, 506 F.3d at 699; *Sanchez*, 102 F.3d at 402. Accordingly, YRMC has properly removed the State Court Action to this Court.[6]

---

[6] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies. *Serrano*, 478 F.3d at 1024 ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception."). This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.

# NOTICE

47. As required by 28 U.S.C. § 1446(d), YRMC is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Yuma County Superior Court.

WHEREFORE, Defendant Yuma Regional Medical Center removes the State Court Action from the Superior Court of Arizona, Yuma County, to the United States District Court for the District of Arizona.

Dated:  July 19, 2022.

By: *s/ Michelle M. Buckley*
Michelle M. Buckley
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004

Paul G. Karlsgodt (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202

*Attorneys for Defendant Yuma Regional Medical Center*